No. 33,811

Hazel C. Brooks, *Appellant*, v. W. H. Mull and Addella Mull, His Wife, H. A. Mull and Ruth Mull, His Wife, *Appellees*.

(78 P. 2d 879)

Opinion filed May 7, 1938.

F. C. Price, F. N. Cossman, both of Ashland, C. H. Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson and Paul R. Kitch, all of Wichita, for the appellant.

Fred Hinkle, of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to procure a declaratory judgment touching the respective rights of the grantor and grantee of a tract of land where the instrument of conveyance reserved to the grantor an interest in the oil, gas and other minerals for a period of years.

Since that conveyance was executed the property has been leased for oil and gas development upon a down payment of one dollar per acre and an agreement of the lessee to pay an additional dollar per acre annually as delay rental—for the privilege of holding the land in lease without the necessity of actual development.

What, if any, interest in this down payment and delay rentals has the grantor of the land? She claims one half of both. The grantee claims she is entitled to none. The trial court agreed with the grantee and gave judgment accordingly.

To determine the correctness of that judgment, the cause is brought here for review.

Going somewhat further into the details of the matter in hand, it appears that on March 27, 1929, the plaintiff, Hazel C. Brooks, was the owner of 3,600 acres of land in Clark county. On that date she and her husband sold the land to W. H. Mull subject to a reservation of certain mineral interests therein for a period of fifteen years. The instrument of conveyance was a warranty deed. The specified consideration was "one dollar and other valuable considerations." The property conveyed was described in terms of government survey followed by a reddendum in these words:

"Reserving to the grantors, however, an undivided one-half interest in and to all of the oil, gas, and, or, other minerals that may be produced from said land for a period of—fifteen (15) years from the date of this conveyance, or as long thereafter as oil, gas, and, or, other minerals may be continuously produced in commercial quantities."

Pursuant to this conveyance defendants entered into possession of the property and have exercised all rights of dominion over the surface of the land since its execution.

Some years later, on November 9, 1936, Mull, plaintiff's grantee, executed to M. C. Bluhm an oil and gas lease of the property on the usual terms prevalent in this state. The lease was to endure for

ten years and as long thereafter as gas or oil should be produced on the leased premises. The specified consideration was that one-eighth part of the oil and gas, or both oil and gas, produced on the land should be delivered to the lessor. The lease also contained the following paragraphs:

"If no well be commenced on said land on or before the 9th day of November, 1937, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Citizens State Bank at Ashland, Kan., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of . . . [one dollar per acre] . . . which sum shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending the period as aforesaid, and any and all other rights conferred.

.   . .   .   .   .   .   .   .   .   .   .   .   .

"If said lessor owns a less interest in the above-described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee."

In addition to the foregoing it is stipulated by the litigants that the lessee made a down payment of $3,600—one half of which has been placed in a bank to abide the decision of this lawsuit.

To maintain the simplicity of the legal question involved we have spoken of the lease in the singular, although it was divided into eleven separate lease contracts to suit the convenience of the lessee. We note an agreement between plaintiff and defendants to extend the duration of plaintiff's mineral interest until 1948; and we also note that plaintiff holds a mortgage on the property in the sum of $27,200. None of these details are of present concern.

On December 21, 1936, the plaintiff executed to Bluhm an instrument designated "Ratification of Oil and Gas Lease and Subordination of Mortgage," which, in part, recited:

"WHEREAS, on the 9th day of November, 1936, W. H. Mull and Addella Mull, his wife, and H. A. Mull and Ruth Mull, his wife, executed and delivered to M. C. Bluhm eleven certain oil and gas leases, all of that date, covering the following described real estate situated in the county of Clark and state of Kansas:

.   .   .   .   .   .   [3,600 acres]   .   .   .   .   .   .

"WHEREAS, the undersigned, Hazel C. Brooks, a widow, is the owner of an

undivided one-half interest in all the oil, gas and other minerals lying in and under said real estate.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"WHEREAS, the undersigned desires to ratify, approve and confirm said oil and gas leases and subordinate her said mortgage thereto.

"Now, therefore, the undersigned, Hazel C. Brooks, in consideration of the sum of $1 and other valuable consideration, the receipt of which is hereby acknowledged, hereby ratifies, approves and confirms each and all of said oil and gas leases, to the same extent and purpose as if she had joined in the execution of each of said leases as a party lessor, without, however, covenants of warranty of title or otherwise.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Executed at Wichita, Kan., this 21st day of December, 1936.

HAZEL C. BROOKS."

To determine the soundness of the trial court's judgment, it may serve to shorten our task by considering first what arguments are advanced to sustain it.

Counsel for appellees contends that in ratifying the leases plaintiff did not change the reservation clause in the deed of conveyance she executed. That is quite true, of course. She does not contend otherwise. The mineral rights of plaintiff as grantor were prescribed and fixed at the time she executed the deed; but so, too, were the mineral rights of the grantee. He then acquired the fee title to the surface of the property and an undivided one-half interest in the minerals which may be produced from the property during the first fifteen years; and thereafter grantee's ownership of all the minerals will be complete, and the plaintiff grantor will have no further interest therein. (That the fifteen years' duration of plaintiff's interest has been extended four years additional, until 1948, is of no present concern.)

Appellees argue that plaintiff was not a necessary party to the leases. It is perhaps true that an owner of any interest in property can make an independent lease of that interest—if he can find a taker—without the assent of the owners of similar interests in it, although some rather obvious difficulties are likely to interfere with the lessee's enjoyment of the premises under such circumstances. If two men own a farm in common, a lease of it by one of the owners, unless ratified by the other owner, would give the lessee an uncertain tenure. We shall not press too far the analogy between an ordinary farm lease and an oil and gas lease, for there are substantial differences between them (*Burden v. Gypsy Oil Co.*, 141 Kan. 147, 40 P. 2d 463)—at least until actual production of minerals has com-

menced. (*Dickey v. Brick Co.*, 69 Kan. 106, 76 Pac. 398, syl. ¶ 4.) But the practical futility of a mineral lease executed by the owner of an undivided half interest in the minerals which may be produced from the land, not assented to or ratified by the owner of the other undivided half interest, is quite as obvious as would be the lease of a farm by a lessor who had only an undivided half interest in it.

In the case at bar counsel for the parties entered into certain stipulations of fact, one of which reads:

"If plaintiff were present at the trial she would testify that the lessee named in all the leases covering the real estate described in plaintiff's petition acting upon the advice of his attorneys refused to accept the title of defendants unless the plaintiff joined in such leases or ratified and confirmed the same."

All the circumstances support the pertinent facts implied in that stipulation, and all the logical inferences are to the same effect. By the terms of an ordinary oil and gas lease in Kansas (and the one we have to consider is typical), the lessee gets seven eighths of the production, and the remaining one eighth goes to the owners of the mineral rights, the so-called royalty rights of familiar parlance. Applying this well-known operative arrangement to the lease in question, if plaintiff had not joined in or ratified it, Bluhm, the lessee, would have to account to this plaintiff for four eighths—one half—the total production. That would leave him three and a half eighths to himself for his share, after paying one half the royalty interest to the defendants. We think it perfectly clear that for all practical purposes the lease from defendants to Bluhm was not worth a picayune until Mrs. Brooks ratified it.

To support appellees' position, their counsel advances the proposition that appellant's reservation does not constitute her the owner of one half the minerals *in place,* with the right of entry to remove them. As to the second phase of this contention we are not at all sure of its soundness, but that point can await some lawsuit where it has to be met and decided. What we are agreed on is that until the year 1948, the plaintiff has exactly as much interest in the minerals which may underlie this 3,600-acre tract of land as does her grantee and those who claim under him. She has the same right, or more precisely, an equal right, to lease the property for the exploration of oil and gas and for their development as does her grantee. She has the same or an equal right with him to decline to grant an oil and gas lease. She has the same or an equal right to prescribe the conditions which will excuse the lessee from doing a certain

amount of drilling each year without forfeiting the lease, here the payment is to be a dollar an acre as delay rental; and she is just as much entitled to an equal share of the down payment of a dollar an acre as is her grantee and co-owner of the minerals which may be produced from the land during the interval covered by the terms of the reservation.

We note that the trial court attached some significance to the fact that the land is chiefly adapted for the pasturing of cattle, and that cattle will not thrive where they are disturbed by the hustle and bustle of oil-drilling operations. That is quite true, no doubt. But the contract of sale and reservation in the conveyance of the 3,600 acres clearly show that the possibility of oil prospecting and development was contemplated by the parties; and we must assume that the fact was considered in agreeing upon the price when the contract of purchase was effected. That consideration cannot now be weighed in a second time in measuring and adjudicating the rights of plaintiff and defendants to share in the down payment and delay rentals which may be paid under the terms of this lease.

Counsel for appellees also attaches much significance to our decisions holding that so long as minerals remain in the ground they are a part of the realty. (*Zinc Co. v. Freeman,* 68 Kan. 691, 75 Pac. 995; *Gas Co. v. Neosho County,* 75 Kan. 335, 89 Pac. 750.) But it is equally well settled that a severance of title to the minerals underlying a tract of land from the title to the surface may be made. In *Mining Co. v. Atkinson,* 85 Kan. 357, 116 Pac. 499, it was said:

" 'The severance of the surface and mineral rights is accomplished either by a conveyance of the land with an express reservation of the minerals, or by a conveyance of the minerals or mining rights.' (27 Cyc. 682; *Moore v. Griffin,* 72 Kan. 164.) 'After the mineral is conveyed apart from the land, or vice versa, two separate estates exist, each of which is distinct; the surface and the mineral right are then held by separate and distinct titles in severalty, and each is a freehold estate of inheritance separate from and independent of the other.' (27 Cyc. 687.)" (p. 360.)

See, also, *Richards v. Shearer,* 145 Kan. 88, 64 P. 2d 56; and *Shaffer v. Kansas Farmers Union Royalty Co.,* 146 Kan. 84, 69 P. 2d 4.

Appellees would minimize the significance of our decision in the Atkinson case, on the ground that in that case the grantor reserved all the minerals—not one half—that may be produced from the land conveyed. Such a distinction is too subtle for the determination of the rights of litigants. The reservation of an undivided one

half the minerals is just as much entitled to legal recognition as a reservation of the whole of them; and it was so held in the closely analogous case of *Gill v. Fletcher*, 74 Ohio St. 295, 78 N. E. 433. In that case, in the year 1838, one Joseph Gill owned 317 acres of land in Ohio. He conveyed it to one Jesse Payne, with the following reddendum:

" 'The said Joseph Gill reserving the one half of the plaster or the profits thereof which may hereafter be found on said land. To have and to hold the same . . . (the half of plaster as above described only excepted) unto the said Jesse Payne, his heirs and assigns forever.' " (p. 296.)

Many years afterwards the legal significance of this reservation became the subject of the lawsuit cited above. The supreme court of Ohio said:

"It is familiar law, already recognized by this court in *Burgner v. Humphrey*, 41 Ohio St. 340 and 352, that the surface of the land and the minerals underlying it may belong to different owners. The doctrine is thus stated, with citations of a great number of authorities: 'It is well settled that a mine may be severed from the surface, the surface being held in fee by one person and the mine by another. The ownership of a mine after severance is to all intents and purposes the same as the ownership of land, and is attended with all the attributes and incidents peculiar thereto. The mine itself may in turn be divided longitudinally and each stratum become the subject of a grant, the mine thus becoming the property of as many owners as there are different strata. Severance may be accomplished by a conveyance of the mines and minerals only, or by a conveyance of the land with a reservation or exception as to the mines and minerals.' 20 Am. & Eng. Ency. Law, 2 ed., 771-773." (p. 302.)

In its opinion the court considerately dealt with the ancient distinction between an exception and a reservation in a deed, a distinction greatly minimized nowadays (*Moore v. Griffin*, 72 Kan. 164, 166-167, 83 Pac. 395), and held:

"Where the owner of a fee-simple estate in lands conveys the lands to another in fee simple, reserving one half of the mineral which may thereafter be found on said land and declaring that the grantee, his heirs and assigns shall have and hold the land and its appurtenances, 'the half of the mineral only excepted,' such conveyance creates an exception to the grant, leaving in the grantor and his heirs a fee-simple estate in one half of the mineral separate and distinct from the estate in the surface and the other half of the mineral conveyed to the grantee." (Syl. ¶ 2.)

In Summers on Oil and Gas it is said:

"It is a settled rule of law, based on sound policy, that a grantor of land may retain his legal interest in the oil and gas thereunder by an expression of intent to that effect in a deed of the land. But a troublesome question arises

when an attempt is made to determine whether the retention of this separate interest is effected by exception or reservation. In determining this question, the use of the terms themselves are not controlling, but the courts look to the intent of the parties and the nature of the legal interest sought to be created." (p. 136.)

Other instructive excerpts from the same valuable work read:

"If in the grant or reservation of a separate interest in oil and gas the grantor does not expressly grant or retain such legal relations as are necessary for the production and operation of the land for oil and gas purposes, these relations are held to be created by implication." (p. 120.)

"Granted that a landowner has powers to create separate interests in oil and gas by grant or exception, it naturally follows that he may create such interests for years, for life, or in fee, and the courts so hold." (p. 128.)

"As a general principle, each cotenant of land is entitled to the use of it, but is forbidden to injure or destroy the common property. Since any use of land for oil and gas purposes necessarily amounts to a removal and destruction of a part of it, such action is looked upon as in the nature of waste, and a cotenant is not privileged to drill for and produce oil and gas from the common land without the express or implied consent of the other co-owners. If he does so, the other cotenants may have damages, injunction, or waive the tort and sue for an accounting of the rents and royalties. . . . Based on these principles, it is well established by the authorities that a tenant **in common** does not have the power to make a valid lease of the common land for oil and gas purposes, which will be binding upon his cotenants, and thereby create in others a privilege which he did not have. . . . Such a lease may become valid as to the cotenants who did not join in it by such acts by them as may amount to an estoppel or ratification thereof. . . .

"A lessee of one cotenant as against a nonjoining cotenant, or the lessee of a nonjoining cotenant, logically has no more privileges of taking oil and gas than the original co-owners of the land had as against each other. . . . Probably the only satisfactory remedy for all parties concerned in a situation of this kind is to be had by agreement." (pp. 220-223.)

It is also argued on behalf of appellees that by the literal terms of the reddendum in the deed, plaintiff's only interest is in the oil and gas "that may be produced from said land," etc. Counsel reminds us of the rule applicable to any debatable meaning of words in a conveyance, that they are to be most strongly construed against the maker or grantor of the instrument. Quite so; but there are other rules of construction, and the one which impresses the court as of controlling significance in this case is that courts should refrain, wherever possible, from giving a construction to a written instrument which would result in vitiating its purposes or reduce its terms to an absurdity. (13 C. J. 540-541.) The construction of the reservation in plaintiff's deed for which defendants contend would utterly

prevent any effective leasing of this 3,600 acres of land for oil and gas until 1948, for certainly no sane man would lease and develop it if plaintiff is to receive an undivided one half of all the oil and gas which the industry of the lessee may produce from the land; yet that would be the necessary effect of defendants' interpretation of the terms of the reservation in the deed.

We hold that plaintiff equally with defendants is entitled to an undivided one-half interest in the down payment of $3,600, also, in all delay rentals that may be paid, and in any other benefits which may arise out of the respective undivided mineral interests of herself and defendants in the property until 1948.

The judgment is reversed and the cause remanded with instructions to enter judgment in plaintiff's behalf for the $1,800 now in escrow in the First National Bank in Wichita to abide the final determination of this lawsuit and for a further judgment in plaintiff's behalf in accordance with the prayer of her petition. It is so ordered.

HARVEY, J., not sitting.