Nos. 34,515 and 34,516

FRED A. BEMIS, *Appellee*, v. WILLIAM W. BEMIS et al., Defendants; W. K. KEITHLEY, *Appellant*.

(98 P. 2d 156)

Opinion filed January 27, 1940.

*D. M. McCarthy, Kathryn O'Loughlin McCarthy,* both of Hays, *James E. Smith, E. H. Hatcher,* both of Topeka, *D. P. West* and *J. R. Mueller,* both of Syracuse, Neb., for the appellant.

*E. C. Flood, Clayton S. Flood,* both of Hays, *Robert C. Foulston* and *George Siefkin,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action to quiet title to certain real property in Ellis county, Kansas. Some defendants who had been served by publication, proceeding under G. S. 1935, 60-2530, made application to have the judgment opened and to be permitted to defend. In doing so they filed answers. Plaintiff's demurrers to these answers were sustained. The answering defendants have appealed.

The pertinent facts shown may be summarized or quoted as follows: Plaintiff was the owner of a described quarter section of land in Ellis county. On May 3, 1924, he executed an oil and gas lease on the property to the Shawnee Oil Company. On July 1, 1925, he and his wife executed an instrument denominated a "mineral deed" to Dr. C. L. Hill, trustee. The construction of this instrument is involved on this appeal. On the same date they executed a similar instrument to Bruce Thorps, trustee. These instruments were duly recorded (G. S. 1935, 79-420). It appears that Dr. C. L. Hill was trustee under a parol agreement for a number of persons who had contributed to the fund for the purchase of the mineral deed, and that Bruce Thorps acted in the same capacity for another group of persons who had furnished money to purchase the mineral deed executed to him. No oil or gas was produced under the lease to the Shawnee Oil Company and it was canceled at some date not shown, and for several years there was no oil and gas lease on the property. On July 3, 1935, the plaintiff executed an oil and gas lease on the property to one Earl G. Lay. Producing wells have been brought in under this lease.

In October, 1935, plaintiff brought this action in the district court of Ellis county to quiet his title to the real property. There was a large number of defendants. Among them were Dr. C. L. Hill, trustee, Bruce Thorps, trustee, and the unknown members and beneficiaries of the trust, or trusts, of which Dr. C. L. Hill, W. K. Keithley and Bruce Thorps were trustees, and the unknown heirs, devisees, executors, trustees, administrators and assigns of any of the defendants who may be deceased. On January 16, 1936, an

appropriate judgment and decree was rendered quieting title in plaintiff. No controversy is now raised as to the regularity or sufficiency of any of these proceedings.

In October, 1938, W. K. Keithley initiated a proceeding in the district court of Otoe county, Nebraska, where some of the beneficiaries of the Dr. C. L. Hill trusteeship resided, alleging the death of Dr. C. L. Hill and asking the court to appoint a trustee to control and manage the trust estate, as a result of which that court, on November 29, 1938, made an order appointing W. K. Keithley as trustee, with the usual powers to control and manage the property. A similar proceeding was had by which W. K. Keithley was by the same court appointed trustee as successor to Bruce Thorps, trustee. Plaintiff has questioned the validity of these proceedings, and there is in the record evidence tending to show that these proceedings and orders were void. However, because of the view we take of other questions presented it will not be necessary to consider the validity of these proceedings, and we do not do so.

On December 31, 1938, W. K. Keithley, as trustee, successor to Dr. C. L. Hill, trustee, and as an individual, filed in the action previously brought by plaintiff to quiet his title to the real property in the district court of Ellis county, Kansas, his petition to open the judgment, and with it his answer. Assuming the proceedings in the district court of Otoe county, Nebraska, appointing him trustee were valid, the proceedings initiated by him in the district court of Ellis county, Kansas, to open up the decree quieting title were regular and in conformity to our statute, if the answer filed by him is "a full answer" within the meaning of our statute (G. S. 1935, 60-2530). At the same time he filed a similar proceeding as successor to Bruce Thorps, trustee, but since the legal questions presented are the same in each of these proceedings we need give no further special attention to this.

The answer alleges the pertinent facts above stated; that W. K. Keithley had been duly appointed trustee as the successor of Dr. C. L. Hill, deceased; that W. K. Keithley had purchased the interest of several of the beneficiaries of the trust; and the answer was filed in his name as trustee, and also in his name as an individual. The mineral deed, executed July 1, 1925, by plaintiff and wife to Dr. C. L. Hill, trustee, is set out, and the answer contains allegations as to the construction of this instrument. The answer further alleges on information that on or about the 6th day of March, 1935,

plaintiff executed an oil and gas lease on the property to Earl G. Lay; that the terms of that lease are known to plaintiff; that defendants are unable to set out a copy of it for the reason that the lease never was made a matter of record in the office of the register of deeds of Ellis county, Kansas, "and the transaction was had between said Earl G. Lay and said plaintiff for the purpose of deceiving said trustee and said beneficiaries of said trust and cheating and defrauding them of said property and property rights conveyed to said trustee and said beneficiaries by said mineral deed"; that defendants have been unable to procure a copy of that lease, but allege, on information and belief, that the terms and covenants in the lease thereof, except as to dates, are substantially the same as those contained in the lease executed by plaintiff and wife to Earl G. Lay, July 3, 1935, which was duly recorded in the office of the register of deeds of Ellis county, a copy of which is attached to the answer. It is further alleged that the oil and gas lease so executed on July 3, 1935, and recorded, "was made and entered into by and between said plaintiff and said Earl G. Lay as a substitute for said oil and gas lease made and entered into" between the same parties on or about March 6, 1935, "under which the drilling of said test well for oil and gas on said premises commenced, and to cheat and deceive these defendants into believing that the drilling of said well on said premises commenced subsequent to the first day of July, 1935, under the terms and conditions of said oil and gas lease" dated July 3, 1935. It is further alleged that the well commenced prior to July 1, 1935, resulted in the production of oil and gas in paying quantities, and since that time six wells have been drilled on the land and oil produced and sold from all of them without regard to the rights or interest of defendants. Estimates of the production of the well and of the value of defendants' interest therein are set out. The prayer was for judgment quieting defendant's title to the property and property rights conveyed to them under the mineral deed; that plaintiff be required to render an accounting as to the oil produced from the premises; that defendants have judgment against plaintiff for their proportional share thereof and that the same be adjudged a lien upon plaintiff's interest in the premises and the oil and gas therein until the judgment be paid, and in the event plaintiff had conveyed away the rights of defendants that judgment be awarded against him in a sum named.

The mineral deed relied upon by defendants reads as follows:

"MINERAL DEED

"This indenture, made this 1st day of July, 1925, between Fred A. Bemis and Ida May Bemis, his wife, of Ellis county, Kansas, party of the first part, and Dr. C. L. Hill, trustee, party of the second part.

"Witnesseth: That for and in consideration of the sum of one dollar ($1) and other valuable consideration to them duly paid, the receipt whereof is hereby acknowledged, the said party of the first part has granted, sold, conveyed, and assigned, and by these presents do grant, sell, convey and assign unto said party of the second part an undivided one thirty-second (1/32) interest in and to all of the oil and gas in and under, and that may be produced from, the following-described real estate, situated in Ellis county, Kansas, to wit:

"Southeast quarter (SE¼) section 16, township 11, range 17, together with right of ingress and egress at all times, for the purpose of mining, drilling and exploring said land for oil and gas and removing the same therefrom. Said land being now under an oil and gas lease executed by ·said first party, as lessor to the Shawnee Oil Company as lessee dated May 3, 1924, and recorded on September 16, 1924, on page 600, book 1, Oil and Gas records in the office of the register of deeds of Ellis county, Kansas. It is understood and agreed that this sale and conveyance is made subject to the terms of said lease, but covers and includes one-fourth (¼) of all the oil royalty and gas rental or royalty, due or to be paid under the terms of said lease now in force or under the terms of any other lease which may be hereafter executed upon said land within ten (10) years from this 1st day of July, 1925, in the event that the said lease now in force (or any lease executed within said ten-year period) should be for any reason canceled or forfeited.

"To have and to hold the above-described property, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said grantees herein, their heirs and assigns for the period hereinbefore specified; and the said party of the first part does hereby bind himself, his heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said grantees herein, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

This was signed by plaintiff and his wife and duly acknowledged and recorded.

Appellant argues that by the instrument just quoted plaintiff conveyed to Dr. C. L. Hill, trustee, to whose rights appellant succeeded, two separate and distinct rights: *First,* "an undivided one thirty-second (1/32) interest in and to all of the oil and gas in and under, and that may be produced from," the land in question; that this is a perpetual grant, not limited as to time; and, *second,* that it "covers and includes one-fourth (¼) of all the oil royalty and gas rental or royalty, due or to be paid under the terms of said lease now in force or under the terms of any other lease which may be

hereafter executed upon said land within ten (10) years from this 1st day of July, 1925." Appellees contend that these so-called two rights are but one. They point out that one-fourth of the royalty refers to the landowner's one-eighth under the ordinary oil and gas lease and is the equivalent of one thirty-second of the oil and gas under the land, and produced· therefrom, referred to in the earlier part of the paragraph. They further contend that all of the rights of the grantee in the instrument must arise from the production under a lease then existing, or a later lease executed within the ten-year period, and that this view is further fortified by the wording of the habendum clause, wherein it is stated that the rights were granted "for the period hereinbefore specified," being of necessity the ten-year period mentioned in the previous paragraph. We have considered all the argument of counsel with respect to the construction of this instrument and have examined the authorities cited or referred to and concur in the views of the appellees.

It is conceded by counsel that had there been in existence an oil and gas lease on the premises under which oil and gas was being produced at the end of the ten-year period the rights of the grantee would continue so long as oil and gas were produced in paying quantities. It is clear from the answer, however, and from the argument of counsel that there was no production on the land at the end of the ten-year period, and there was in fact no existing oil and gas lease then of record. It is clear also that all the oil produced from the land has been produced under the lease dated July 3, 1935.

Appellant correctly argues that upon the execution of the mineral deed plaintiff and ·the grantee of the deed became tenants in common. (*Rutland Savings Bank v. Norman,* 125 Kan. 797, 802, 266 Pac. 98.) From this it is argued that a relation of trust and confidence existed which precluded plaintiff from doing anything to the detriment of his cotenant. We think this latter contention is not applicable here. As we construe the mineral deed, it created the relation of tenant in common for a limited time only. The instrument specifically gave the grantee therein the "right of ingress and egress at all times, for the purpose of mining, drilling and exploring said land for oil and gas and removing the same therefrom." Hence, the right of the grantee to execute an oil and gas lease on the property, should the one then existing be canceled, was coextensive with that of the plaintiff, the only difference being that plaintiff had a larger fraction or interest in the oil and gas under the land, or pro-

duced therefrom, than did the grantee in the mineral deed. There is nothing in the instrument which required either of them to execute such an oil and gas lease on the land within the ten-year period, if the one then existing should be canceled.

Appellant argues that under the allegations of the answer the conduct of plaintiff and of Earl G. Lay was fraudulent as to appellant in that plaintiff had executed to Lay, in March, 1935, an oil and gas lease which under their fraudulent plan had not been recorded, but under which a well actually had been started and partially completed by July 1, 1935, and that for the purpose of defrauding appellant that lease had been canceled and a new one on substantially the same terms made on July 3, 1935, and recorded. With respect to that contention we observe, *first*, that this is not an action for damages for fraud. Neither is it a proceeding to set aside the judgment and decree quieting title on the grounds of fraud under G. S. 1935, 60-3007, fourth subdivision; and if so, it is brought too late. (G. S. 1935, 60-3008.) The answer was filed in connection with the proceedings authorized by G. S. 1935, 60-2530. Title is what is involved in this proceeding, and the statute requires appellant to "file a full answer to the petition," which as here applied means to the petition of plaintiff to quiet his title. The term "full answer" as used in the statute means an "answer setting up a meritorious defense as to all or a material part of the petition." (*Frizell v. Northern Trust Co.*, 144 Kan. 481, 61 P. 2d 1344. See, also, *Union Central Life Ins. Co. v. Heldstab*, 145 Kan. 184, 64 P. 2d 579; Id. 146 Kan. 929, 73 P. 2d 1020.

While the answer characterizes certain alleged conduct of plaintiff and of Lay to have been fraudulent, it is difficult to see that they are charged with doing anything prohibited by the mineral deed, or not authorized under it. No duty is imposed upon the plaintiff by this instrument to execute a new lease on the land if the one existing at the time the instrument executed should be canceled. If a lease were executed, as upon information it was alleged in March, 1935, plaintiff had no duty to record it; the lessee, Earl G. Lay, had the option of recording it. If he had recorded it he could have canceled it of record for any reason which prompted him to do so without being liable to plaintiff. We take note of the fact that Earl G. Lay is not a party to this action and that plaintiff cannot well be charged with fraud because of the fact that lessee did not record the lease alleged on information to have been made

to him in March, 1939. Neither can plaintiff be charged with fraud because Lay chose to surrender any lease made to him by the plaintiff; hence, we are unable to see that the facts alleged here as being fraudulent were of a character which affected the title to this property.

The questions above considered are argued in the briefs from many angles and with the citation of many authorities. We think it would serve no useful purpose to discuss *seriatim* the points which may be regarded as subdivisions of the main question, or to analyze each of the authorities cited. After all, the rights of the parties turn upon the construction of the mineral deed.

Also the validity of the appointment of appellant as trustee in Nebraska, and the particular type of trust which existed between him and the beneficiaries of that trust are argued at considerable length. In reaching our conclusion we have assumed, without deciding, that appellant was correct in his contention respecting these matters, because that is the most favorable attitude for appellant.

We think the trial court committed no error, and its judgment is affirmed.