**SHELL OIL COMPANY, a corporation, Appellant,**

v.

**A. A. SEELIGSON, Jr., Appellee.**

No. 5215.

United States Court of Appeals
Tenth Circuit.

Feb. 28, 1955.

Jesse M. Davis, Tulsa, Okl. (Gordon Watts, Tulsa, Okl., and Kirke W. Dale, Arkansas City, Kan., were with him on the brief), for appellant.

Robert Martin, Wichita, Kan. (George B. Collins, Oliver H. Hughes, K. W. Pringle, Jr., and W. F. Schell, Wichita, Kan., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

BRATTON, Chief Judge.

A. A. Seeligson, Jr., instituted this action against Herman Eilers and his wife, Willie Gick and his wife, A. F. Brann and his wife, Roy Gilbert and his wife, Freeda Burger and her husband, May House and her husband, Gladys Burger and her husband, Edna L. Young, Shell Oil Company, and Warren Bank and Trust Company, to partition the mineral interests in a certain tract of land in Rooks County, Kansas, containing 320 acres. The alternative prayer of the complaint was (1) partition; or (2) appointment of a trustee with power and direction to execute and deliver an oil and gas lease covering the land; or (3) other equitable relief deemed proper in the premises. Some of the defendants, including the Eilers and Shell Oil Company, answered. After commencement of the action, the defendants Eilers executed to Midstates Oil Corporation a lease covering their interests in the mineral estate; and subsequent to the execution and delivery of the lease Mid-states Oil Corporation intervened in the action. It was stipulated among other things that the mineral estate was of such nature that it would be impractical to partition it in kind. And in the course of the hearing, plaintiff offered in open court to drill or join in the drilling of a test well on the premises under certain specified alternatives.

The court made extended findings of fact and conclusions of law. The court found in substance, among other things, that the defendants Eilers owned the surface rights and 48/128ths interest in the minerals in and under the land, together with the reversionary rights upon expiration of the outstanding term of mineral and royalty interests owned by plaintiff and the other defendants; that plaintiff owned 10/128ths mineral and royalty interest; that the defendant Willie Gick owned 4/128ths, the defendant A. F. Brann 3/128ths, the defendant Roy J. Gilbert 8/128ths, the defendant Freeda Burger 8/128ths, the defendant May House 8/128ths, the defendant Gladys Burger 8/128ths, the defendant Shell Oil Company 24/128ths, and the defendant Warren Bank and Trust Company 7/128ths, interest in such mineral and royalty estate; that the interests of plaintiff and the defendants other than the defendants Eilers were for a primary term of fifteen years and as long thereafter as oil or gas was produced; and that the primary term of such mineral interests would expire in 1958. The court further found that the drilling of a test well on the land would be a speculative or wildcat venture; and that none of the original parties to the action, acting as a reasonable and prudent operator, would or could be expected to drill a test well thereon without first having obtained an oil and gas lease in one of the usual and customary forms covering all or substantially all of the minerals and reserving not more than the customary royalty of 1/8th of the minerals in favor of the lessors. The court further found that at various times prior to the commencement of the action, the defendants Eilers refused to execute an oil and gas

lease unless they could reserve, in addition to their proportionate part of the customary 1/8th royalty, an overriding royalty in such amount as would give them the equivalent of a full 1/8th of the total production of the land; that in addition to such overriding royalty, the defendants Eilers required a cash bonus of $1,200 to $1,500 for the execution of a lease and also an agreement that the lessee drill a well within a short period of time; and that the terms upon which the defendants Eilers insisted were so excessive and severe as to prevent the testing and development of the land during the primary terms of the mineral interests of plaintiff and the defendants similarly situated. The court further found that after commencement of the action, and with full knowledge of the claim of plaintiff, the defendants Eilers executed and delivered to the intervenor Midstates Oil Corporation an oil and gas lease covering the interests of the defendants Eilers in the mineral estate; that the lease was for a primary period of seven years and as long thereafter as oil and gas was produced from the premises and provided for annual delay rentals in lieu of drilling; that in addition to the customary royalty of 1/8th, there was reserved to the lessors in such lease an overriding royalty of 1/16th of 7/8ths of the entire production from the land; that the lessee paid to the lessors a cash bonus of $1,200 for such lease; and that as a part of the lease transaction, the parties entered into a written agreement in which Midstates Oil Corporation obligated itself to assume on behalf of the defendants Eilers the burden and expense of defending the action, with the further provision that it could drop the defense of the action and relieve itself of further obligation by surrendering and releasing the lease.

The judgment entered in the cause was geared solely and exclusively to the testing and developing of the premises for the production of oil or gas in commercial quantities during the primary terms of the outstanding interests of plaintiff and others similarly situated.

The judgment provided among other things that plaintiff and the other parties to the action similarly situated were entitled to a reasonable opportunity to have the land tested for commercial production of oil and gas during the primary term of their respective interests; that the intervenor Midstates Oil Corporation, or the defendants Eilers in the event the intervenor should release its oil and gas lease, should have sixty days from the date of the judgment in which to elect to bind itself or themselves to drill a test well at some location to be selected by it or them to a depth sufficient to test the production zones in the general vicinity; that should such parties, or either of them, elect to drill a test well, it should be commenced within six months from the date of the judgment; and that in the event the first test well drilled should result in a dry hole, such party or parties should have the right to commence within the six-month period such further test wells as it or they might desire to drill. The judgment further provided that automatically upon the election of such party or parties to drill a test well, it or they should be and thereby were granted the equivalent of an oil and gas leasehold estate upon and covering the mineral and royalty interests of all other parties to the action; and that such leasehold estate should provide for the customary 1/8th royalty and should be according to all of the terms and provisions of the lease executed by the defendants Eilers in favor of the intervenor Midstates Oil Corporation, except that the leasehold estate created by the judgment should be for the primary term of six months from the date of the judgment and should not contain any special provision reserving an overriding royalty. The judgment further provided that should the intervenor or the defendants Eilers fail to elect to drill a test well within the sixty-day period, or should such parties having so elected and drilled a test well or test wells fail to encounter commercial production in any such well commenced during the six-month period, then the

other parties to the action who were owners of mineral or royalty interests, or any of them, should have a like period in which to bind themselves to drill a test well at a location to be selected by them to a depth sufficient to test the production zones in the general vicinity; that automatically upon the election of one or more of such parties to drill a test well, they should be and thereby were granted the equivalent of an oil and gas leasehold estate upon and covering the mineral and royalty interests of all other parties to the action, including the mineral interest of the defendants Eilers; that should more than one of the owners of mineral or royalty interests elect to drill within the sixty-day period, they should automatically acquire and hold the leasehold estate created by the judgment in the same relative proportions as their ownership in the minerals, and should share in that proportion the actual cost and expenses of the drilling operations; and that should drilling operations be undertaken by one or more owners of mineral or royalty interests, the leasehold rights granted to such parties should be, in all respects, superior to the leasehold rights acquired by the intervenor under its lease obtained from the defendants Eilers, 131 F.Supp. 639. The defendant Shell Oil Company appealed.

■ Whatever divergence of views may obtain elsewhere, it is the settled rule of law in Kansas that owners of individual mineral interests in place under a tract of land are tenants in common; that one such tenant in common may maintain against his co-tenant or co-tenants an action for partition; and that while generally the right of partition is absolute, in connection with the partition of mineral interests in place, a court of equity is vested with sufficient discretion in awarding or denying relief to prevent the remedy from becoming an instrument of fraud or oppression. Holland v. Shaffer, 162 Kan. 474, 178 P.2d 235, 173 A.L.R. 845; Gillet v. Powell, 174 Kan. 88, 254 P.2d 258.

■ The purpose of partition is to terminate the relationship of co-tenancy between the parties. Its objective is to bring to an end the undivided interests of the parties in order that each owner may enjoy his estate without supervision or hindrance from the other or others. And in the exertion of its equitable jurisdiction, the court has a measure of discretion in adapting its judgment to the particular circumstances presented. The court may grant or deny partition in toto. It may partition the whole of the property in kind. It may sell all of the property and distribute the proceeds. It may partition part in kind and sell part. It may prescribe different terms and conditions for the sale of different parts. And it may impose burdens upon one cotenant for the benefit of another. In short, the court may take any action not incompatible with the statutory law of the state which is reasonably appropriate in the circumstances to effectuate a just and equitable partition between the parties. Hazen v. Webb, 65 Kan. 38, 68 P. 1096; McKelvey v. McKelvey, 83 Kan. 246, 111 P. 180; Parks v. Snyder, 126 Kan. 446, 268 P. 814; Knutson v. Clark, 169 Kan. 205, 217 P.2d 1067; Ames v. Ames, 170 Kan. 227, 225 P.2d 85.

■ The court did not undertake by its judgment entered in this case to grant partition. It did not undertake to terminate the relationship of tenants in common existing between the parties. It did not undertake to bring to an end the undivided interests of the parties in order that each owner might enjoy his estate without supervision or hindrance from the others. It impliedly but not expressly denied partition. And going beyond such implied denial, the substance of the judgment was to create with binding effect upon all parties in interest procedure for the testing and developing of the premises for the production of oil and gas. The intended purpose and effect of the judgment was to weld the parties together in a tightly woven relationship fairly comparable to that existing among parties under a con-

18

ventional mineral lease upon premises. The judgment was rested upon the ex- pressed basis that plaintiff and the other parties to the action similarly situated were entitled to have the premises tested and developed before the expiration and reversion of their interests in the premises; that the acts and conduct of the defendants Eilers in refusing to execute a lease covering their interests in the property unless they could obtain a cash bonus and reserve an overriding royalty sufficient in amount to give them the equivalent of a full 1/8th share of the total production was inequitable; and that the method for development set forth in the judgment was equitable. But did the acts and conduct of the defendant Eilers, or the acts and conduct of the appealing defendant Shell Oil Company, warrant the intervention of a court of equity in the manner outlined in the judgment? No contractual relationship existed between plaintiff and the other co-tenants. And no fiduciary relationship existed between them. Taylor v. Brindley, 10 Cir., 164 F.2d 235. The defendants Eilers did not interfere in any manner with the right of plaintiff or that of any other co-tenant to go upon the premises and test and develop them for the production of oil and gas. Neither did the defendant Shell Oil Company or any other party in interest interfere with the plaintiff or any other co-tenant in the full exercise of such right. All that the defendants Eilers did was to decline to execute a lease covering their interests in the mineral estate unless they could obtain a cash bonus and reserve a certain royalty. And in the circumstances, they had the unfettered right in law to decline to execute a lease, or to prescribe conditions upon which they would give a lease. Brooks v. Mull, 147 Kan. 740, 78 P.2d 879; Bemis v. Bemis, 151 Kan. 186, 98 P.2d 156. Neither did the defendant Shell Oil Company or any other co-tenant interfere with the right of plaintiff to go upon the premises and drill for oil and gas. All that the defendant Shell Oil Company or any other co-tenant did was to acquire an interest in the mineral estate and fail to develop the premises. And they were not required to develop. Still under the judgment, upon development, the interest of the defendant Shell Oil Company and that of other co-tenants similarly situated were changed. Before entry of the judgment, Shell Oil Company owned an undivided 24/128ths interest in the mineral estate. After the judgment and upon development of the property by any other party to the action, that company would be obligated to yield or surrender 7/8ths of such interest in the oil produced. We fail to find in equity jurisprudence sustainable basis for shifting and changing the interests and rights of the nonconsenting parties in the manner set forth in the judgment.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.