(618 P.2d 323)

No. 50,727

HUBERT L. KRUG; ROSA A. SCHAFFER; DOROTHEA DAUBERT; KARL F. DEINES; MAGDALENA SCHAEFER; MARTHA E. MILLER; MARIE STEIBEN; ESTHER M. GERSIB; VERA G. HARPER; RUTH SCHNEIDER, *Plaintiffs-Appellees,* v. RAY R. KRUG and JAMES H. NORRIS, *Defendant-Appellant,* v. CITIES SERVICE PETROLEUM COMPANY, formerly CITIES SERVICE OIL COMPANY, *Defendant-Appellee.*

Petition for review denied March 26, 1981.

Opinion filed October 24, 1980.

*Michael S. Holland,* of Russell, for the defendant-appellant, Ray R. Krug.

*John C. Woelk* and *Alan Deines,* of Woelk, Culley, Ehrlich & Deines, of Russell, for the plaintiffs-appellees.

*Edward Larson,* of Jeter and Larson, of Hays, and *James J. Sykora,* of Tulsa, for the defendant-appellee, Cities Service Petroleum Company.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

FOTH, C.J.: The issue in this case is how to accommodate the interests of cotenants in a mineral estate who cannot agree upon a lessee for oil and gas exploration. The facts are undisputed; the only question is whether the trial court's order was one which it could properly make under its equitable powers.

The ten plaintiffs collectively own 9/11ths of the minerals

under a half-section of land in Russell County. The defendant Ray R. Krug (hereafter "Krug") owns the other 2/11ths, as well as the surface. Beginning in 1975 plaintiffs executed a series of oil and gas leases to the defendant Cities Service Petroleum Company which together covered their 9/11ths interest. Krug refused to lease to Cities Service but instead, in 1977, leased to defendant James H. Norris. Krug and Norris refused to enter into any kind of drilling arrangement with Cities Service, with the result no exploration took place. In the meantime wells on neighboring property were producing, presumably draining the pool thought to be under the land in question.

Plaintiffs thereupon brought this action against their lessee, Cities Service, and against Krug and his lessee, Norris, for their collective failure to develop. They sought damages for waste; an order requiring development; and, as a final alternative, partition of the mineral estate. Cities Service indicated a willingness to drill if something could be worked out with Krug and Norris, and eventually submitted a drilling proposal which was accepted in substance by the trial court's final order. Krug and Norris claimed that if Cities Service drilled they were entitled to a full 2/11ths of production, without any cost to themselves; Krug in his answer opposed partition as inequitable and prayed that it be denied.

At the time of trial Norris released his lease, removing himself from the lawsuit and leaving Krug's 2/11ths unleased. Plaintiffs agreed that if a test well were drilled they would have no claim for damages. In addition, their prayer for partition, opposed by Krug, was always contingent upon their inability to achieve development. In view of that position and Krug's opposition, partition also ceased to be an issue, and only drilling remained. Upon uncontested facts the trial court entered an order as follows:

"1. Cities Service Company is entitled to go upon the N/2 of 24-15S-14W, Russell County, Kansas, for purposes of exploring, development and production of oil, gas and other hydrocarbons.

"2. If Ray R. Krug chooses not to participate with Cities Service Company, he is to be carried for the expense of drilling a test well by Cities Service Company. If production is obtained, Ray R. Krug is entitled to his proportionate share of development (a 2/11th interest) after subtracting therefrom and paying to or being retained by Cities Service Company his proportionate share of the reasonable costs of development and production (2/11th thereof) from production and production only. If production is not obtained, Ray R. Krug will not be charged with or obligated to pay any costs of drilling a dry hole.

"3. Ray R. Krug is ordered to allow Cities Service Company to go upon the N/2

of 24-15S-14W, Russell County, Kansas, for purposes of exploration, development and production and he is enjoined from interfering with said operations."

Krug appeals, complaining *only* about the provisions of paragraph 2. He does not contest the right of Cities Service to go upon the land and drill, or the order enjoining him from interfering with that right. He does complain bitterly about paragraph 2, which he claims creates a contractual relationship between him and Cities Service without his consent. In our opinion the order creates a quasi-contractual relationship which comports with established legal principles.

First, the right of Cities Service to drill even without Krug's consent is established by *Compton v. Gas Co.,* 75 Kan. 572, 89 Pac. 1039 (1907). In that case a widow purported to grant a gas lease on land in which she owned only a half interest. When her children, who owned the other half, reached majority, they granted a similar lease to a different lessee. The Court held that each lessee acquired the undivided interest of its respective lessors, and that each was entitled to nonexclusive possession for drilling purposes. What would happen if one lessee drilled and the other didn't wasn't considered.

Second, the liability of one who drills without either a lease from, or the consent of, one of several mineral interest owners is set forth in *Johnson v. Gas Co.,* 90 Kan. 565, 135 Pac. 589 (1913). There one of six children, owner by inheritance of a 1/12th interest in land, disappeared for a number of years. When he returned he found that his mother and five siblings, owners together of the other 11/12ths, had granted a gas lease. Six wells had been drilled, which had been producing for several years. He sued the lessee for an accounting, and the Court held:

"In an action for an accounting by a tenant in common of lands from which the defendant had taken the product of six producing gas wells for a period of several years and had sold the same, marketing it through pipe lines to which other wells belonging to the defendant were connected, the measure of damages is the fair and reasonable value of the gas at the time and place at which it was taken."

"In the case stated, *the plaintiff is entitled to recover the amount the gas sold for, less the fair and reasonable expense of marketing;* the rule in suits for accounting generally obtains, and the defendant has the burden of proving what allowances he is entitled to." 90 Kan. 565, Syl. ¶¶ 1 & 2. Emphasis added.

In the course of the opinion it was held that the plaintiff was liable for his 1/12th share of the cost of drilling the six wells, as well as his share of the expense of marketing.

A similar result was reached in *Prewett v. Van Pelt,* 118 Kan. 571, 235 Pac. 1059 (1925), although there the dispute was between two co-owners of a gas lease, rather than between a lessee and a mineral owner. The lessee who drilled was required to account to his co-lessee for the value of the gas sold, less a proportionate share of expenses.

Both cases, while not explicitly saying so, applied established quasi-contract principles under which an obligation may be implied in law to do justice and prevent unjust enrichment. See, *e.g., Minnesota Avenue, Inc. v. Automatic Packagers, Inc.,* 211 Kan. 461, 464-65, 507 P.2d 268 (1973); *Witmer v. Estate of Brosius,* 184 Kan. 273, 277, 336 P.2d 455 (1959); *Sharp v. Sharp,* 154 Kan. 175, 178-79, 117 P.2d 561 (1941). The owner of a mineral estate owns the minerals in place, *i.e.,* in the ground. If a stranger lawfully extracts them and delivers them to the owner above ground, justice requires the owner to reimburse the producer for a proportionate share of expense of extraction; otherwise the owner would be unjustly enriched at the producer's expense.

Under the above cases Cities Service could have drilled under its lease with plaintiffs, without Krug's consent and without the sanction of court order. As noted, Krug does not contest this portion of the decree. Had Cities Service done so and achieved production, its duty would have been to account to Krug for his 2/11ths of the minerals extracted, less his proportionate share of the expense of drilling, production and, if need be, marketing. The order in this case simply recognizes that prospective duty and establishes it before the drilling commences, rather than decreeing it afterward in a suit for an accounting by Krug.

Contrary to his contention, the decree does not make Krug an unwilling partner of Cities Service. He is to be carried as to the test well; if it is a dry hole he will owe nothing. Only if there is production will he be obligated to pay his proportionate share of the drilling expense, and then only out of production. A similar result was reached in *Davis v. Sherman,* 149 Kan. 104, 86 P.2d 490 (1939). There plaintiff and defendants were cotenants in an oil lease, but not partners. Plaintiff drilled two holes, the first a producer and the second a dry hole. As to the first plaintiff shared the production under division orders signed by defendants. As to the second, because it was drilled without the agreement or consent of defendants, he was denied recovery of a proportionate

share of the drilling expense. The order here achieves the same result.

The three cases primarily relied on by Krug do not require a different result. In *Brooks v. Mull,* 147 Kan. 740, 78 P.2d 879 (1938), the Court observed in dictum that a lease signed by only one of two owners of equal undivided interests in the mineral estate was, for all practical purposes, "not worth a picayune" until ratified by the other owner. That conclusion was based on the following analysis:

"By the terms of an ordinary oil and gas lease in Kansas (and the one we have to consider is typical), the lessee gets seven eighths of the production, and the remaining one eighth goes to the owners of the mineral rights, the so-called royalty rights of familiar parlance. Applying this well-known operative arrangement to the lease in question, if plaintiff had not joined in or ratified it, Bluhm, the lessee, would have to account to this plaintiff for four eighths—one half—the total production. That would leave him three and a half eighths to himself for his share, after paying one half the royalty interest to the defendants." 147 Kan. at 744.

That this result was nearly worthless was a purely economic judgment, based on the conditions of the time. The opinion does not say the lessee could not drill; neither does it deal with the elements of the contemplated accounting for one-half of the total production.

*Bemis v. Bemis,* 151 Kan. 186, 98 P.2d 156 (1940) holds merely that a cotenant of a mineral interest cannot be compelled to sign a lease. It says nothing about the consequences if one cotenant does sign a lease and the lessee drills. In this case Krug is not compelled to sign a lease—although he may do so if he wishes—and in the decreed future accounting for production he is not treated as a lessor but as the holder of an unleased mineral interest.

The third, *Shell Oil Company v. Seeligson,* 231 F.2d 14 (10th Cir. 1955), is the closest case factually but is distinguishable legally. That was also a dispute between cotenants of a mineral interest who wanted drilling and their recalcitrant cotenants. Plaintiffs' prayer was for either partition or equitable relief which would result in exploration. The trial court fashioned a decree under which certain of the defendants and their lessee had the first right to drill and, upon their failure to do so, plaintiffs should have the right to drill. In either event, if production should be achieved those owners of the mineral estate who were not parties to any lease or drilling agreement were to receive a proportionate share of a 1/8th royalty. On the appeal of Shell Oil, which owned

an undivided 24/128ths of the mineral estate, the judgment was reversed. The effect of the decree, said the appellate court, was to convert Shell's proportionate 8/8ths mineral interest into a lessor's 1/8th royalty interest, thus depriving it of 7/8ths of the minerals in place and making it in effect an unwilling lessor. This was held to be beyond the equitable power of the trial court. We would agree.

In contrast, the decree here deprives Krug of no part of his interest in the minerals in place. Upon production he will receive his full 2/11ths, less only his share of the cost of production. In this connection we note Krug's assertion of an ambiguity in the order; he claims he may get only 2/11ths of the 7/8ths working interest, while his 2/11ths of the 1/8th royalty interest is confiscated for the benefit of either plaintiffs or Cities Service. This seems to us a fanciful view of the order. As we read it, Krug's interest will be 8/8ths of his 2/11ths less expenses, as outlined above.

Krug also complains the order deprives him of the right to receive an overriding royalty out of the working interest such as he had in the now defunct lease to Norris. There is, of course, nothing to prevent him from attempting to secure an override from Cities Service or some other lessee. To do so however, he will have to give up 7/8ths of his minerals and content himself with a royalty interest. Whether such an arrangement is feasible depends on the economics of the situation as perceived by the parties. It is not a legal obstacle to the solution achieved by the trial court.

Finding the order of the trial court to be a reasonable solution to the problem presented in accordance with recognized legal principles, we affirm.