No. 36,360

SKELLY OIL COMPANY, *Appellee*, v. CITIES SERVICE OIL COMPANY, and CITIES SERVICE GAS COMPANY, *Appellants*.

(160 P. 2d 246)

Opinion filed July 7, 1945.

*R. O. Mason,* of Bartlesville, Okla., argued the cause, and *R. F. Crick,* of Pratt, and *A. M. Ebright,* of Bartlesville, Okla., were on the briefs for appellant Cities Service Oil Company.

*Joe Rolston, Jr.,* of Oklahoma City, Okla., argued the cause, and *Glenn W. Clark* and *R. E. Cullison,* both of Oklahoma City, Okla., were on the briefs for appellant Cities Service Gas Company.

*J. B. McKay,* of El Dorado, argued the cause, and *W. P. Z. German, Alvin F. Molony* and *Leo J. McLaughlin,* all of Tulsa, Okla., were on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for a declaratory judgment authorized by our statute (G. S. 1935, 60-3127 *et seq.*) for a binding adjudication of the rights of the parties as to the oil and gas in and under and produced from a described tract of land. In its petition, after stating the facts, it was alleged that an actual controversy existed between the parties, the plaintiff claiming an undivided one-half of the minerals in place with the right to go upon the premises and explore and develop the same and to execute oil and gas leases therefor, while defendants contend that plaintiff's rights are limited to one-half of the royalty from oil and gas produced from the land. The determination of the controversy turns largely upon the interpretation of an instrument executed by the landowners to plaintiff, a copy of which was attached to the petition as Exhibit "A." Defendants answered, admitting that the con-

troversy between the parties existed as alleged by plaintiff and admitted most of the facts alleged in plaintiff's petition, but denied some of them. Defendants, by a cross petition, alleged that the same controversy existed between the parties as to their rights under similar instruments executed to plaintiff by the respective owners of four other tracts of land, and asked that the rights of the parties under the instruments and the facts relating thereto be determined as to those other tracts of land. Plaintiff filed a reply, which was a general denial to defendants' answer. It also answered their cross petition, admitted there was an actual controversy between the parties with respect to their rights as to the other four tracts of land, which in substance was the same as the controversy respecting the rights of the parties to the land described in plaintiff's petition. Defendants filed a reply to plaintiff's answer to their cross petition.

The action was submitted to the court upon a written statement of facts, which was agreed to. The court's judgment was for plaintiff and defendants have appealed.

Respecting the land described in plaintiff's petition the stipulated facts may be summarized as follows: On May 10, 1929, Lewis B. Hillard, the then owner of the land, and his wife executed an oil and gas lease thereon to the Dixie Oil Company for a primary term of ten years from the date thereof. No oil or gas was produced on the land during that ten-year period. The lease was kept in full force during all of the ten-year period and was duly released by the Stanolind Oil and Gas Company, the assignee thereof, on June 19, 1939. Both the lease and the release thereof were duly recorded in the office of the register of deeds.

On April 21, 1934, Lewis B. Hillard, then being the owner in fee simple of the land, subject only to the oil and gas lease to the Dixie Oil Company above noted, together with his wife, Martha Jane Hillard, as grantors, for a valuable consideration made, executed and acknowledged to plaintiff, as grantee, an instrument entitled "Sale of Oil and Gas Royalty," which instrument was duly recorded in the office of the register of deeds on May 19, 1934, a copy of which was attached to plaintiff's petition as Exhibit "A," and alleged that at all times subsequent to the execution of the instrument plaintiff has been and is the owner of all right, interest, title and estate granted, assigned and conveyed thereby.

On November 17, 1939, Martha Jane Hillard, the widow of Lewis B. Hillard, then deceased, and the owner of a life estate in the real

property, subject to the instrument to plaintiff entitled "Sale of Oil and Gas Royalty," as lessor, executed to one Fred Nixon two oil and gas leases, which together covered the land described in the instrument above mentioned, entitled "Sale of Oil and Gas Royalty." These leases were duly recorded in the office of the register of deeds, and on December 30, 1939, the owners of the remainder interest in said real estate, subject to the instrument to plaintiff entitled "Sale of Oil and Gas Royalty," and their spouses executed written ratifications of the oil and gas leases to Nixon, which ratifications were duly recorded in the office of the register of deeds. Fred Nixon assigned those leases to the defendants, who are now the owners of the rights thereunder.

That about February 9, 1944, defendants entered upon the real property in question under one of the oil and gas leases to Nixon above mentioned and drilled a test well for oil and gas purposes, which well was completed as a producing well about May 24, 1944. At all times subsequent thereto the defendants have been and are now producing and marketing oil therefrom.

Facts are stipulated as to the four tracts of land brought into the case by the cross petition of defendants, but since the legal questions involved are the same in all tracts there is no necessity of setting out the stipulation as to the four tracts.

The leases under which defendants are operating provide for the same royalty payment to the landowner, one-eighth of the oil produced, as was provided in the oil and gas lease to the Dixie Oil Company first mentioned.

The instrument necessary to be interpreted, attached to plaintiff's petition as Exhibit "A," is on "Form 11—Revised," which was a printed form, some words of which were deleted and other words inserted with a typewriter. As printed here the typewritten words are in italics and the deleted words are in brackets.

"EXHIBIT 'A'

SALE OF OIL AND GAS ROYALTY

"KNOW ALL MEN BY THESE PRESENTS, That *Lewis B. Hillard, and Martha Jane Hillard, his wife,* of *Pratt* County, State of *Kansas* for and in consideration of the sum of *One and no/100* DOLLARS ($1.00) each in hand paid by *Skelly Oil Company, a Corporation* hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said Grantee an undivided *One-Half* interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following

described land situated in *Pratt* County, State of *Kansas* to-wit: (A 120 acre tract of land is described), together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom, with the right at any time to remove any or all equipment in connection therewith.

"Said land being now under an oil and gas lease executed in favor of *Dixie Oil Company* it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes *One-Half* of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that *None* of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in the event that the above described lease for any reason becomes cancelled or forfeited then and in that · event [an undivided] *None* of the lease interests and [all] *none of the* future rentals and bonuses on said land for oil, gas and other mineral privileges shall be owned by the said Grantee, *Grantee however owning* [owning] *One-Half* of all oil, gas and other minerals in and under said lands [together with interest in all future events.]

· "To HAVE AND TO HOLD the above described property, together with all and singular the rights, appurtenances thereto in anywise belonging unto the said Grantee, herein, *its successors* [heirs] and assigns [forever] *for a period of fifteen years from date and as long thereafter as oil or gas or other minerals are produced from said land;* and *Grantors* do hereby bind *themselves and their* heirs, executors, and administrators to warrant and forever defend all and singular the said property unto said Grantee herein *its successors* [heirs] and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, and agree that the Grantee shall have the right at any time to redeem for Grantors by payment, any mortgage, taxes or other liens on the above described lands, in the event of default of payment by Grantors, and be subrogated to the rights of the holder thereof.

"Witness *our* hands this *21st* day of *April 1934*.

(Signed)

"LEWIS B. HILLARD,
"MARTHA JANE HILLARD."

This instrument was duly acknowledged by the Grantors and recorded.

The oil and gas lease executed by Martha J. Hillard on November 17, 1939, to Fred Nixon, which was later ratified by the owners of the remainder interest, was on the usual Producers 88-B form and by its terms granted to the lessee the right to explore and produce all of the oil and gas in and under the land. It is plaintiff's contention that because of Exhibit "A" attached to its petition, hereinbefore set out, the maker and ratifiers of that lease had no right to grant to the lessee the right to take more than one-half of the oil and gas in and under the land. Plaintiff further contends that by the instrument

Exhibit "A," attached to its petition, the plaintiff is the owner of one-half of the oil, gas and other minerals in and under the land, with the right to explore and produce oil and gas and other minerals from the land, and that it had as much right to execute a lease upon the property as did Martha J. Hillard and those who ratified the lease she made.

Defendants contend that by the instrument Exhibit "A," attached to the petition, the grantors reserved the right to execute a lease for the production of all the oil, gas and other minerals in and under the land, and that the rights of the plaintiff were limited to one-half of the royalty. We think the view of the defendants is correct. It seems to be conceded that the plaintiff prepared the instrument, in which situation the general rule is that any ambiguities in it should be construed more favorably to the lessors. The instrument was a printed form. Some words in it were deleted and some were written in before it was executed. In such a case it is well settled that the changes made in the printed form are considered for the purpose of determining the intent of the parties as entitled to greater weight than the printed word where there is any conflict in them. (*Hickey*. *v. Dirks*, 156 Kan. 326, 133 P. 2d 107; *Haynes Hardware Co. v. Western Casualty & Surety Co.*, 156 Kan. 356, 133 P. 2d 574, point (4) of syllabus.) These general principles are not seriously controverted.

In determining the meaning of this instrument we first note that it bears the title of "Sale of Oil and Gas Royalty." The word "royalty" has come to have a definite legal meaning as being what is paid by the operator of the lease to the landowner as his share of the oil produced and does not include a perpetual interest in the oil, gas and other minerals in and under the land. (See *Serena v. Rubin*, 146 Kan. 603, 72 P. 2d 995, and authorities there cited.) While it is true that the title of the instrument is not altogether controlling, yet with such a title the contents of the instrument must make it clear that it is something else than what its title indicates. For one skilled in the preparation and interpretation of instruments pertaining to oil rights, to go to a landowner with an instrument purporting to provide for the sale only of royalty, but which is so worded as to convey an entirely different interest in the land, might very well be a material misinterpretation. (*Serena v. Rubin*, supra.)

Plaintiff contends that the first paragraph of the instrument is a positive sale, grant and conveyance of an undivided one-half interest

of the oil in place as distinct from. a grant, sale and conveyance of a royalty interest; that this positive grant is not negatived by the language used in the third paragraph, but if attempted to be so negatived the third paragraph is void. We cannot agree with that contention. The general rule is that these instruments are to be interpreted from their "four corners," that is to say, that all the language used anywhere in the instrument should be taken into consideration and construed in harmony with other portions of the instrument. (See *Utilities Co. v. Bowersock,* 109 Kan. 718, 202 Pac. 92; 17 C. J. S. 707, § 297, and cases there cited.)

We take note of the fact that plaintiff's argument, carried to its extreme and applied to the last paragraph of the instrument, would render void the fifteen-year limitation provided therein. But we pass that thought, for the fifteen-year limitation is not involved now in this controversy. Counsel for plaintiff lay much stress upon the language in the first paragraph, "together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom, with the right at any time to remove any or all equipment in connection therewith." That clause could have no effect at the time the instrument was executed because the next paragraph recites that the land was at that time under an existing lease in favor of the Dixie Oil Company, which under its terms would justify us in assuming, since it is not contended otherwise, that the Dixie Oil Company had the sole right to enter upon the land and explore for and remove gas, oil and other minerals. So, at the time Exhibit "A" was executed this clause had no effect. The second paragraph made it clear that as to the existing lease to the Dixie Oil Company the plaintiff in this action had no right to anything but one-half of the royalty.

In the third paragraph it is further provided that the plaintiff herein would have none of the money rentals which might be paid to extend the term which the grantee of the lease to the Dixie Oil Company had within which a well might be begun. So, up to that time, it is clear that the plaintiff was granted only one-half of the royalty. The third paragraph further provides, "and in the event that the above described lease for any reason becomes cancelled or forfeited then and in that event none of *the lease interests* and none of the future rentals and bonuses on said land for oil, gas and other mineral privileges shall be owned by the said Grantee." Plaintiff

argues that the lease to the Dixie Oil Company was not "cancelled or forfeited." It is stipulated that at the end of the primary term of the lease the rights of the lessee which had been assigned to the Stanolind Oil & Gas Company were released of record. We think that was an effective, cancellation of the lease within the meaning of the words used in Exhibit "A." We note that Exhibit "A" specifically provides that "none of the lease interests . . . shall be owned by the said Grantee." The words "lease interests" were not given any effect in the analysis of the instrument made by the trial court. We think they are quite important. We have been cited to no definition of the words as used in an instrument such as this, but it seems certain that they have some meaning. We think an appropriate meaning would be an interest which would authorize one to execute a lease. We note that in the printed form of the instrument, before the words "of the lease interests" were the words "an undivided," and a blank, obviously designed to write the fractional share of the lease interests. The words, "an undivided," were deleted and the word "none" inserted. So, the clause, insofar as what lease interests the grantee would have, was purposely changed so as to read "in the event that the above described lease for any reason becomes canceled or forfeited then and in that event none of the lease interests . . . shall be owned by the said grantee." The form was changed from that of writing a fractional share of the lease interests which the grantee would have to a provision by which the grantee had none of the lease interests. We think the meaning of that is that at the time Exhibit "A" was executed the parties agreed that the grantee should have no capacity or right to any lease interests in the property, that is, would have no right or authority to execute a lease upon the property. This thought follows through to the next clause, where the word "all" in the printed form was deleted and the words "none of the" substituted, so that it reads "and none of the future rentals and bonuses." We think these provisions must be given effect and are a limitation upon the grant and conveyance in the first paragraph, even if that should be construed, standing alone, to be an unrestricted conveyance of minerals in place. And when we consider that paragraph four places a time limitation on the grant and conveyance made in paragraph one, as contended by plaintiff, and considering the instrument as a whole, it cannot be said that the parties gave the force and effect to the

language of paragraph one which plaintiff now seeks to have placed upon it.

This interpretation of Exhibit "A" about ends this lawsuit. Capable and industrious counsel have cited a large number of cases, but we find, as the trial court found, that none of them involves the interpretation of an instrument worded as is the instrument before us. They deal with decisions containing only a part of the instrument before us. We think it would serve no purpose to analyze each of these cases and point out in what respect it is not controlling here. Counsel have also argued another question which it is not necessary to consider in view of the interpretation we have given to the instrument before us. The pertinent instruments pertaining to each of the four tracts brought into the case by the cross petition of defendants are the same as the one we have been considering; hence there is no necessity of discussing them separately.

The result is that the judgment of the court must be reversed and remanded, with instructions to render judgment for defendants and sustain their view of the interpretation of Exhibit "A" and each of the like instruments pertaining to the other four tracts of land brought into the case by the cross petition of defendants. It is so ordered.