**RENT–A–CENTER, INC., a Delaware corporation, Plaintiff–Counter– Defendant–Appellee,**

v.

**CANYON TELEVISION AND APPLIANCE RENTAL, INC., a Delaware corporation; Canyon Rent to Own, an Arizona corporation; David Manthei; Carl Manthei, Defendants–Counter–Claimants–Appellants.**

**Nos. 91–15150, 91–15416.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 18, 1991.

Decided Sept. 13, 1991.

Charles W. Herf, Gaston & Snow, Phoenix, Ariz., for defendants-counter-claimants-appellants.

Mark A. Nadeau, David L. Abney, Stephen B. White, Morrison & Hecker, Phoenix, Ariz., for plaintiff-counter-defendant-appellee.

Before GOODWIN and SNEED, Circuit Judges, and TAYLOR,* District Judge.

* Honorable Gary L. Taylor, District Judge for the Central District of California, sitting by designa-

SNEED, Circuit Judge:

Defendant Canyon Television and Appliance Rental, Inc. (Canyon) appeals from a district court grant of a preliminary injunction in favor of the plaintiff, Rent–A–Center, Inc. (RAC), in a diversity action to enforce a covenant not to compete associated with RAC's purchase of a Canyon location. We affirm.

## I.

## FACTS

RAC rents durable household goods, such as televisions, stereos, appliances, and furniture, to consumers nationwide. Defendant Canyon also rents durable goods, from locations in Nevada, Hawaii, and Arizona.

On March 7, 1990, RAC purchased the assets of a Canyon location in Phoenix, Arizona. The purchase agreement contained a noncompetition covenant, in which Canyon agreed not to engage in the rental or sale of durable goods for a period of three years within a region described as the Phoenix Area of Dominant Influence (ADI). ADI is a term used by the Arbitron Company, a television research service, to define advertising markets. Within a given ADI, over fifty per cent of all households with televisions watch programs from stations originating within that particular area. The Phoenix ADI covers much of central and western Arizona, encompassing approximately 69,000 square miles.

In August, 1990, RAC learned of Canyon's plans to open a new location in Bullhead City, Arizona, which is included in the Phoenix ADI. Despite RAC's protests, Canyon opened the Bullhead City location on August 15, 1990.

On September 11, 1990, RAC filed a complaint in the United States District Court for the District of Arizona, seeking to enjoin Canyon's breach and recover damages. Canyon counterclaimed for rescission and reformation of the contract based on mistake and misrepresentation.

tion.

On December 18, 1990, the district court issued a preliminary injunction enjoining Canyon from operating the Bullhead City store, or opening any store within the Phoenix ADI, after February 25, 1991. Canyon appeals, claiming primarily that the scope of the restrictive covenant was unreasonably large, given the local nature of the Phoenix store's operations, and should not be enforced.

## II.

## JURISDICTION AND CHOICE OF LAW

The district court had diversity jurisdiction under 28 U.S.C. § 1332(a) (1988). This court has appellate jurisdiction over the district court's grant of a preliminary injunction under 28 U.S.C. § 1292(a)(1).

As set forth in the purchase agreement, Kansas contract law governs the substantive issues of law in this diversity action. The parties also agree that, for purposes of this case, Arizona law is equally acceptable.

## III.

## STANDARD OF REVIEW

■ The district court's grant of preliminary injunctive relief is reviewed for abuse of discretion. *Religious Technology Center, Church of Scientology Int'l, Inc. v. Scott*, 869 F.2d 1306, 1309 (9th Cir.1989). The related factual findings are reviewed under the clearly erroneous standard. *Id.* Issues of law underlying a district court grant of a preliminary injunction are reviewed de novo. *See Guam Fresh, Inc. v. Ada*, 849 F.2d 436, 437 (9th Cir.1988).

■ In this case, both parties agree to de novo review of the restrictive covenant's reasonableness. Generally, the classification of this issue as legal or factual depends upon state law. *See In re Talmage*, 758 F.2d 162, 165 (6th Cir.1985) (reasonableness of noncompetition covenant is legal issue under Illinois law); *see also NCH Corp. v. Share Corp.*, 757 F.2d 1540, 1542 n. 2 (5th Cir.1985).

Under Kansas law, the reasonableness of a noncompetition covenant is apparently a question of fact. *See Eastern Distributing Co. v. Flynn*, 222 Kan. 666, 670, 673, 567 P.2d 1371, 1376, 1378 (1977) (stating that the "test is ... whether the restraint is reasonable under the facts and circumstances of the particular case"). However, under Arizona law, reasonableness is a question of law. *See Gann v. Morris*, 122 Ariz. 517, 518, 596 P.2d 43, 44 (Ct.App. 1979). Without addressing the merits of this dispute, we conclude, after de novo review, that the district court's order was appropriate. Our holding implicitly recognizes that the judge's decision would have also survived scrutiny under the less rigorous, clearly erroneous standard.

## IV.

## DISCUSSION

A. *The Reasonableness of the Restrictive Covenant's Scope*

Canyon first argues that the noncompetition covenant should not be enforced because the geographic area covered—that is, the Phoenix ADI—greatly exceeds the customer base of the store sold, which Canyon asserts is no more than a thirty-mile radius, and thus represents an unreasonable restraint of trade.

■ Under Kansas law, when a contract is freely entered into with full knowledge, there is a presumption favoring legality. *Eastern Distributing Co.*, 222 Kan. at 671, 567 P.2d at 1376 (evaluating a noncompetition clause in an employment agreement). In determining whether a noncompetition covenant is enforceable, the rights of the promisee, the promisor, and the general public must be taken into account; and "area and time limitations must be reasonable under the facts and circumstances of the particular case." *H & R Block, Inc. v. Lovelace*, 208 Kan. 538, 544, 493 P.2d 205, 210 (1972). When deciding what is reasonable, courts give greater deference to restrictions that are part of the sale of a business than to restrictive covenants between employers and employees. *See id.* at 544–45, 493 P.2d at 211; *see also Gann*, 122 Ariz. at 518, 596 P.2d at 44 ("Where

limited as to time and space, [such a] covenant is ordinarily valid unless it is to refrain from all business whatsoever."). This is because the seller of a business is more likely to have equal bargaining power in negotiating such covenants, and is presumably compensated by an increase in the selling price, while an employee merely receives the opportunity for continued employment. *See H & R Block*, 208 Kan. at 545, 493 P.2d at 211.

■ We have examined the facts and circumstances of this case, and we conclude that the geographic restriction passes the reasonableness test of *H & R Block*. Canyon freely entered into a clear and unambiguous covenant. Television advertising is a significant means of attracting customers in the rent-to-own industry. Advertising by Canyon's Phoenix location, extending throughout the Phoenix ADI, created an asset by enhancing Canyon's potential for expansion in that region, and by reducing the effectiveness of other voices, including RAC's, in the advertising market. Canyon sold that asset to RAC as part of the sale of the Phoenix location. Given the factual nature of the reasonableness inquiry, Canyon cannot overcome the presumption of legality in an arm's-length agreement, or the deference shown by Kansas courts to contracts related to business sales. We will not rewrite the contract to give back to Canyon that which it chose to sell.

While we uphold the use of ADI to define market scope in this particular instance, we specifically do not address the validity of ADI as a general rule. The advertising industry may consider ADI a relevant geographic area for analysis in various situations, but ADI may not invariably be an appropriate standard for the courts to use in evaluating contractual restraints arising from the sale of a business. Our holding as to the reasonableness of ADI applies only to the facts and circumstances of this particular case.

B. *Admissibility of RAC's Rebuttal Evidence*

Canyon next claims that the district court's exclusion of evidence relating to RAC's internal marketing structure and ADI became "the law of the case" and that the later admission of similar evidence during rebuttal was therefore an abuse of discretion. This claim lacks merit.

During a hearing held on September 12, 1990 on RAC's motion for a temporary restraining order, RAC presented testimony relating to the importance of ADI to the structure of its marketing organization. The district court sustained Canyon's objections to this evidence on relevancy grounds. During rebuttal in the December, 1990 hearings, RAC again presented expert testimony relating to its use of ADI to define markets and to define the scope of its advertising efforts in Phoenix. This time, the district court admitted the evidence over Canyon's objections.

■ Evidentiary rulings by the district court are reviewed for an abuse of discretion. *Roberts v. College of the Desert*, 870 F.2d 1411, 1418 (9th Cir.1989). The district court has broad discretion in deciding what constitutes proper rebuttal evidence. *See Datamatic Servs., Inc. v. United States*, 909 F.2d 1029, 1033 (7th Cir.1990). The district court also has broad discretion in admitting expert testimony and its decision will be sustained unless it is "manifestly erroneous." *Taylor v. Burlington N.R.R.*, 787 F.2d 1309, 1315 (9th Cir.1986).

■ In this case the district court's rulings are not manifestly erroneous, nor are they an abuse of discretion. Although the significance of ADI to RAC's internal organization may not have been relevant to the initial issue of whether Canyon breached the noncompetition covenant, the reasonableness of ADI as a measure of that covenant's scope was a significant issue in Canyon's defense. The district court was free to consider evidence relating to the role of ADI in industry and company marketing in deciding the reasonableness issue.

■ Canyon's reliance on the law of the case is misplaced. That doctrine concerns courts' general practice of refusing to reopen questions previously decided in the same case. It is not a limitation on

their power. *United States v. Maybusher,* 735 F.2d 366, 370 (9th Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). Moreover, the law of the case is an equitable doctrine that should not be applied if it would be unfair. *Id.* We will not construe the law of the case to prevent a district court from exercising its discretion to reassess evidentiary rulings in light of later developments in the proceedings.

### C. *The Alleged Witness Tampering by RAC*

Canyon argues that discussions between RAC's attorneys and the employer of one of Canyon's expert witnesses constituted witness tampering in violation of 18 U.S.C. § 1512, and that the district court should have imposed sanctions or dismissed RAC's case under the "unclean hands" doctrine. This contention is also meritless.

The facts related to this issue are as follows. Canyon had designated Raymond ("Bud") C. Holladay as an expert witness on the issue of goodwill in the rent-to-own industry. Holladay was vice president of Alrenco, Inc. (Alrenco), a rent-to-own chain with locations throughout the Midwest and Southeast U.S. At that time, Alrenco was negotiating the sale of a Tennessee location to RAC. RAC's attorneys contacted Holladay's employer, Michael Walts, and informed Walts that they would postpone negotiations on the sale until after Holladay testified, because of their concern about a potential conflict of interest. Shortly afterward, Holladay withdrew from Canyon's case.

■ We review the district court's refusal to impose sanctions for abuse of discretion. *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec,* 854 F.2d 1538, 1546 (9th Cir.1988) (per curiam) (reviewing imposition of discovery sanctions). The district court's factual determinations are reversible only if they are clearly erroneous. *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir.1985) (reviewing dismissal of claim under unclean hands doctrine).

■ The district court's determinations were not clearly erroneous. Canyon argues that RAC engaged in misleading conduct that was intended to prevent Holladay from testifying. Such conduct is prohibited by 18 U.S.C. § 1512(b), which requires a finding of intent to cause a witness to withhold testimony. *See* 18 U.S.C. § 1512; *see also United States v. Bordallo,* 857 F.2d 519, 524 (9th Cir.1988), *amended on other grounds,* 872 F.2d 334 (9th Cir.), *cert. denied,* 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989). Application of the unclean hands doctrine requires a finding of inequitableness or bad faith by the party to be dismissed. *See Ellenburg,* 763 F.2d at 1097. Based on the affidavits of RAC's attorneys, the district court reasonably could have found that they intended only to postpone the negotiations and prevent any potential animosity between the negotiating parties, and not to intimidate Holladay or cause him to withdraw. One may suspect that intimidation was intended, but to reverse a factual finding to the contrary requires more. Therefore, the district court's refusal to impose sanctions was not an abuse of discretion.

### D. *The Propriety of Preliminary Injunctive Relief*

Finally, Canyon argues that the district court abused its discretion by granting a preliminary injunction because RAC failed to show that irreparable harm would result if the injunction was not granted, and because the balance of hardships favored Canyon.

■ In this circuit, the party moving for a preliminary injunction "may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980). In this case, the district court concluded that the balance of hardships analysis under the second approach did not favor either Can-

yon or RAC, and therefore analyzed RAC's motion under the first test.

Based on the analysis above, RAC appears to have a very strong probability of success on the merits of this case. Therefore, the issue here is whether RAC also made its required showing of a possibility of irreparable harm.

■ It is true that economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award. *Los Angeles Memorial Coliseum Comm'n*, 634 F.2d at 1202. However, we have also recognized that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm. *Regents of Univ. of Cal. v. American Broadcasting Cos.*, 747 F.2d 511, 519–20 (9th Cir.1984).

■ The district court did not abuse its discretion by finding a possibility of irreparable harm to RAC. The advertising efforts and goodwill that RAC sought to protect are similar to the recruitment efforts and goodwill in *Regents*. The district court focused on these intangible injuries in concluding that RAC's damages would be difficult to valuate and thus constituted possible irreparable harm. *See also First Am. Inv. Group, Inc. v. Henry*, 11 Kan. App.2d 671, 671, 677, 732 P.2d 792, 793, 796 (1987) (recognizing preliminary injunction as an appropriate remedy for breach of noncompetition covenants under Kansas law). Canyon's claim that the preliminary injunction was inappropriate fails.[1]

Given that we affirm the district court's grant of preliminary injunction in favor of RAC, we deny Canyon's request for attorneys' fees and costs incurred.

AFFIRMED.

---

[1] Because RAC passes the first test for the grant of a preliminary injunction, we need not address Canyon's analysis of the balance of hardships under the second test or RAC's "sliding scale" analysis, which combines both tests.